CALBECK v. FORD.

1. DAMAGES—LIQUIDATED DAMAGES—STIPULATIONS OF CONTRACT —PLEADING.

A declaration which sets forth and counts upon a contract containing a stipulation for $1,000 liquidated damages, and alleges that, by virtue of the contract, defendant is indebted to plaintiff in the sum of $1,500, and has not paid "the several sums of money above mentioned," or any of them, is sufficient to support a recovery of liquidated damages, although it includes specific items of damage which cannot be recovered with the liquidated damages.

2. FRAUD—SUBMISSION OF ISSUES—HARMLESS ERROR.

Error in instructions submitting the defense of false representations was harmless, where the jury, in answer to a special question, expressly found that the only substantial representation relied upon to support the defense was in fact true.

3. LIQUIDATED DAMAGES — CONTRACT — STIPULATION — EXCHANGE OF PROPERTY

A contract for the exchange of a farm for village lots, a hardware stock, and an amount of money sufficient to make up the difference between the agreed value of the farm and the agreed value of the lots and invoiced value of the stock, is a proper subject of a stipulation for liquidated damages in case of breach, as the actual damages in such case would be uncertain in their nature and difficult of ascertainment.

4. SAME—CONTRACT—EXECUTION—VALIDITY.

Plaintiff and defendant entered into a contract for the exchange of properties. A liquidated damage clause, taken from a form made by plaintiff's attorney, was inserted therein without any previous agreement of the parties for such a clause. Defendant, however, knew of the insertion of the clause, and, after the contract was written, retained a copy overnight, and submitted it to his attorney before he finally executed it. The parties had each examined the other's property before making the contract, and the sum specified as liquidated damages was not unreasonable. *Held*, that the stipulation for liquidated damages would be given effect according to its terms, and would not be regarded as imposing a penalty.

Error to Berrien; Coolidge, J.   Submitted February 8, 1905.   (Docket No. 106.)   Decided May 12, 1905.

Assumpsit by Lewis Calbeck against Frank B. Ford for breach of a contract to convey certain real estate. There was judgment for plaintiff, and defendant brings error.   Affirmed.

*Cady & Andrews* (*George W. Bridgman,* of counsel), for appellant.

*Gore & Harvey,* for appellee.

BLAIR, J.   The plaintiff in this suit brought action against the defendant and appellant for the alleged breach of a certain contract executed by the parties on the 21st day of January, 1903, whereby the plaintiff agreed to convey to the defendant his farm, of 170 acres, in the county of Marshall and State of Indiana, at an agreed valuation of $8,750.   In consideration of such conveyance, the defendant agreed to sell and convey to the plaintiff certain lots in the village of Berrien Springs at an agreed valuation of $2,500; the hardware stock owned by defendant, at a valuation to be determined by an invoice at the wholesale cash price of the same, plus the freight; and an amount in money to make up the difference in valuation between plaintiff's farm and defendant's lots and stock of goods. The contract contained the following clauses:

"It is hereby further mutually agreed and understood by and between the parties hereto and as a part of the consideration of this agreement, that each party hereto is to provide for the use of the other, within ten days from date, proper abstracts of title to the property hereby agreed to be conveyed, showing good and sufficient title to the same in the grantors herein mentioned, and also tax receipts for the year 1902. All personal property and real estate to be clear of all incumbrance, except as herein noted.   All deeds and bill of sale to be passed and negotiations to be closed within thirty days from date of this agreement, unavoidable delays excepted.   Each party agrees that if the other party per-

forms and complies fully with all the conditions of this agreement that if he fails in his part, he will pay it to the party as liquidated damages the sum of $1,000 within thirty days from date of said failure. In witness thereof the said parties hereto have hereunto set their hands and seals the day and year first above mentioned.

> "LEWIS CALBECK.
> "FRANK B. FORD."

Plaintiff's declaration contained a single count, alleging that defendant was indebted "to the said plaintiff in the sum of $1,500 under and by virtue of a written contract then existing between said parties," and setting out the contract in full and averring that—

"In consideration thereof, on the said day, to wit, March 25, A. D. 1904, the defendant undertook and promised the plaintiff well and truly to pay him, the said plaintiff, the said sum of $1,500 when the said defendant should be thereunto afterwards requested. And plaintiff avers that he has tendered performance of each and every covenant and condition of said contract by him to be performed thereunder, and plaintiff has tendered to said defendant a good and sufficient warranty deed of said 170 acres of land in Marshall county, Indiana, and requested said defendant to convey and transfer to plaintiff the lands and property in said contract therein agreed to be conveyed and delivered to plaintiff, and requested defendant to comply with each and every condition of said contract; and plaintiff avers that the said defendant refused to accept said deed, and wholly refused to perform any of the covenants of said contract. And by reason thereof the plaintiff has become liable to pay a large sum of money, to wit, the sum of $200 as commissions to real estate brokers for negotiating an exchange of said properties, and a large sum of money, to wit, $75, in the preparation to move his said family and personal effects from the State of Indiana to the State of Michigan, and a large sum, to wit, the sum of $75, in personal expense for railway and hotel service and for traveling expense, and on account of said contract said plaintiff has incurred divers other large expenses exceeding the sum of $75. Nevertheless the said defendant, although often afterwards requested to do so, hath not as yet paid the several sums of money above mentioned, or any or every of them, or any part thereof, to the said plaintiff, but

to pay the same, or any part thereof, to the said plaintiff, the said defendant hath hitherto wholly refused and still doth refuse, to the damage of the said plaintiff in the sum of $1,500; and therefore he brings suit," etc.

The following amendment was made at the trial of the above cause upon an objection made by counsel for the defendant to the introduction of any proofs after the jury had been impaneled and a witness sworn:

" Plaintiff avers that he was at all the times mentioned herein, and now is, the owner in fee simple of the premises described in said contract, situated in Marshall county, Indiana; that plaintiff, as in said contract provided, furnished and caused to be delivered to the defendant an abstract of title, properly certified, to said premises, showing thereby a good and sufficient title thereto in the plaintiff, and that plaintiff within ten days from January 21, 1903, as in said contract agreed, paid the taxes assessed against the said premises for the year 1902, and produced and delivered to the defendant the official receipt therefor, and that said premises were at all said times, and now are, free and clear of all incumbrances; and that the plaintiff at said times had the right to convey same, and was ready, willing, and able to deliver possession therefor to the defendant in accordance with the terms and covenants of said contract."

To this declaration the defendant pleaded the general issue, and gave notice of special defense, in substance, of fraudulent representations, statements, and warranties on the part of plaintiff as to the productiveness, value, and character of the soil of his said farm, upon which defendant relied, to his injury.

The case was tried by a jury, and there was a conflict of testimony as to the representations made by plaintiff with reference to his farm in Indiana, and as to their truth or falsity. At the close of the testimony, defendant's counsel proposed a special question of fact to be submitted to the jury, as follows: "Was the Calbeck farm a good productive farm, of sandy loam, with a gravel and clay subsoil?" This question was submitted to the jury by the court, and their answer was, "Yes." A question

was also submitted on behalf of plaintiff as follows: "Did plaintiff make false representations to the defendant as to the soil and subsoil?" To this question the jury answered, "No."

The following testimony was given by plaintiff with reference to the damage clause in the contract:

"*A Juror:* Who drew up that contract?

"*A.* Mr. Stauffer and Mr. McOmber, real estate men. It was Mr. McOmber's office. He had his typewriter dictate it.

" *Q.* Who suggested the amount of forfeiture there at $1,000?

"*A.* I will tell you how that is: Mr. Stauffer had a contract with him, a copy of a contract that he always whenever he made a trade with anybody—that he always copied from that—and that is the way we drew this contract up about the $1,000.

"*A Juror:* Did either party object to that when you were talking about the contract?

"*A.* No, sir.

" *Q.* There was no objection to either part of the contract by either party?

"*A.* No, sir.  *  *  *

" *Mr. Bridgman:* That copy was then drawn from a copy Stauffer had that he always used?

"*A.* Yes, sir. Of course, we put it different—

" *Mr. Bridgman:* That answers the question. Mr. Stauffer dictated that direct to the typewriter, did he not, himself, from a paper he had in his hand?

" *A.* Mr. McOmber helped. There was suggestions made on both sides.

" *Q.* And up to that time you and Ford had never talked about that $1,000 any there at all, had you?

" *A.* Why, no.  *  *  *

" *Q.* But you had got your contract, as you claimed, all made, except reduced to writing?

"*A.* No, sir. It was not all made. There was places in there where we filled in.

" *Q.* In the contract?

" *A.* Yes. It was, you might say, a rough sketch— whatever you would call it. Kind of an outline of the contract, and then we filled it in.

" *Q.* What was a rough sketch—outline of the contract?

"*A.* That Mr. Stauffer had; and we dictated it to his typewriter, and, wherever we came to where it wanted something filled in we wanted, we put it in.

"*Q.* That meant description, etc., does it not?

"*A.* Yes, sir. You might call it description.

"*Q.* That had all been agreed to between you and Ford?

"*A.* Why, yes; we had talked all over about that."

The defendant testified upon the subject of this contract, as follows:

"*Q.* You read this contract, 'Exhibit A,' carefully, before you signed it, did you not?

"*A.* I presume I did; yes, sir.

"*Q.* You knew and understood what you were signing when you signed that paper?

"*A.* Yes, sir. I read the contract carefully before I signed it and knew what I was signing. Knew that it contained this clause, 'Each party agrees, if the other performs and complies fully with all the conditions of this agreement, that if he fails in his part, he will pay it to the others as liquidated damages, the sum of $1,000 within thirty days from the date of the failure.' I understood that. I think I had a copy all night. It was drawn up about ten or eleven o'clock at night, and signed before an early train in the morning. I submitted it to Mr. Murdoch, a lawyer."

Plaintiff gave evidence tending to show full performance of the contract upon his part, and the tender of a proper deed to the defendant on the 19th day of February, 1903, at the village of Berrien Springs, which was refused by defendant, and defendant declined to carry out the agreement; contending that he had been deceived by the plaintiff as to the character of the soil of the farm.

"The principal representation of Mr. Calbeck was that the farm was of a sandy loam, with gravel and clay subsoil. I know of my own knowledge it is not a good, productive farm."

And again:

"He represented the farm to be good, sandy loam, with a gravel and clay subsoil, and that is the principal representation."

The plaintiff gave evidence tending to show that the farm corresponded with this representation, and was worth from $40 to $50 an acre, while the defendant gave evidence tending to show that the farm was a sandy tract, without gravel and clay subsoil, and worth only about $30 an acre. On the subject of damages, plaintiff gave evidence tending to show that he had paid to Mr. Stauffer, as his commission in the transaction, $175; that he paid for moving and storing his goods, and paid $5 demurrage on the car in which they were loaded; that he made four or five trips to Berrien Springs, and his expenses on each trip were between $5 and $6; and that his time was worth $2 per day.

The defendant contended that the declaration was insufficient as a basis for the recovery of liquidated damages, but was designed for and only appropriate to the recovery of actual damages; that the $1,000 mentioned in the last clause of the contract was in the nature of a penalty, and not a fixing by the parties of liquidated damages; that there was no testimony showing the subsoil to be clay and gravel, but that all the testimony showed the subsoil to be loose yellow sand; and finally that the court erred in the giving of requests, and in its voluntary charge upon the subject of fraud.

We think the declaration was sufficient to support a recovery for liquidated damages. The declaration set forth and counted upon the contract, alleging that by virtue of this contract the defendant was indebted to the plaintiff in the sum of $1,500, and we understand the concluding paragraph of the declaration, "Nevertheless the said defendant, though often afterwards requested to do so, hath not as yet paid the several sums of money above mentioned, or any or every of them, or any part thereof, to the said plaintiff," to apply as well to the $1,500 alleged to be due under the contract as to the specific sums for commissions, etc. The fact that plaintiff included in the declaration items which he could not recover if allowed to sustain his action as to liquidated damages should not pre-

vent his recovery of the liquidated damages, if the case was appropriate to such recovery. If the sum of $1,000 specified in the contract was the amount determined upon by the parties as the actual liquidated damages flowing from the breach of the contract, then such damages were the necessary result of the breach of the contract, and it was unnecessary to do more than claim general damages. 5 Enc. Pl. & Prac. pp. 717, 718, 739; *Spicer* v. *Hoop*, 51 Ind. 365.

We think the question of fraudulent representations on the part of the plaintiff, and assignments of error upon the charge of the court with reference to this subject, are precluded by the verdict of the jury. The only substantial representation upon which the defendant relied was that plaintiff represented the farm to be good, sandy loam, with a gravel and clay subsoil. The jury having expressly found, in answer to the special question of fact propounded by defendant's counsel, that the Calbeck farm was a good, productive farm, of sandy loam, with a gravel and clay subsoil, it is not material whether the charge of the court or the requests given by the court stated the rule of law too broadly in favor of plaintiff as to what constituted fraudulent representations, or not, since such action could not have been harmful to defendant. We have carefully read the record in the case, and do not agree with the claim of defendant's counsel that there was no evidence upon which the jury could properly answer this question in the affirmative.

The principal question in the case is whether the sum of $1,000 provided for in the last clause was inserted as a penalty, or as the deliberate determination in advance of the actual, liquidated damages to be paid by the party who violated the contract. There is much confusion and some apparent conflict in the decisions of the courts of the different States as to the principles which should govern in the determination of this question. The subject was considered at an early day in this State, and, after a full and careful consideration of the authorities and the principles

which should be applied, Mr. Justice CHRISTIANCY, speaking for the court, laid down the following rules in *Jaquith* v. *Hudson*, 5 Mich. 123:

"*First.* The law, following the dictates of equity and natural justice in cases of this kind, adopts the principle of just compensation for the loss or injury actually sustained; considering it no greater violation of this principle to confine the injured party to the recovery of less than to enable him by the aid of the court to extort more. It is the application in a court of law of that principle long recognized in courts of equity, which, disregarding the penalty of the bond, gives only the damages actually sustained. This principle may be stated, in other words, to be that courts of justice will not recognize or enforce a contract, or any stipulation of a contract, clearly unjust and unconscionable. *  *  *

" But the court will apply this principle and disregard the express stipulation of parties only in those cases where it is obvious from the contract before them and the whole subject-matter that the principle of compensation has been disregarded, and that to carry out the express stipulation of the parties would violate this principle, which alone the court recognizes as the law of the contract.

" The violation or disregard of this principle of compensation may appear to the court in various ways—from the contract, the sum mentioned, and the subject-matter. Thus, where a large sum (say one thousand dollars) is made payable solely in consequence of the nonpayment of a much smaller sum (say one hundred dollars) at a certain day, or where the contract is for the performance of several stipulations of very different degrees of importance, and one large sum is made payable on the breach of any one of them—even the most trivial—the damages for which can in no reasonable probability amount to that sum. *  *

" The real question in this class of cases will be found to be not what the parties intended, but whether the sum is in fact in the nature of a penalty; and this is to be determined by the magnitude of the sum in connection with the subject-matter, and not at all by the words or the understanding of the parties. The intention of the parties cannot alter it. *  *  *

"But secondly, there are great numbers of cases where, from the nature of the contract and the subject-matter of

the stipulation, for the breach of which the sum is provided, it is apparent to the court that the actual damages for a breach are uncertain in their nature, difficult to be ascertained, or impossible to be estimated with certainty by reference to any pecuniary standard, and where the parties themselves are more intimately acquainted with all the peculiar circumstances, and therefore better able to compute the actual or probable damages than courts or juries, from any evidence which can be brought before them.   In all such cases the law permits the parties to ascertain for themselves, and to provide in the contract itself, the amount of the damages which shall be paid for the breach.   In permitting this, the law does not lose sight of the principle of compensation, which is the law of the contract, but merely adopts the computation or estimate of the damages made by the parties, as being the best and most certain mode of ascertaining the actual damage or what sum will amount to a just compensation. The reason, therefore, for allowing the parties to ascertain for themselves the damages in this class of cases, is the same which denies the right in the former class of cases, namely, the courts adopt the best and most practicable mode of ascertaining the sum which will produce just compensation.

" In this class of cases, where the law permits the parties to ascertain and fix the amount of damages in the contract, the first inquiry obviously is whether they have done so in fact.   And here the intention of the parties is the governing consideration, and in ascertaining this intention no merely technical effect will be given to the particular words relating to the sum, but the entire contract, the subject-matter, and often the situation of the parties with respect to each other and to the subject-matter, will be considered."

This case has been frequently referred to with approval, and is a clear and authoritative statement of the rule as expounded by this court.   Applying the principles above stated to the facts of this case, it appears to us that the case falls within the cases referred to in the second class, where, from the nature of the contract and the subject-matter of the stipulation, it is apparent that the actual damages for a breach are uncertain in their nature, difficult to be ascertained, or impossible to be estimated with

certainty by reference to any pecuniary standard. The weight of authority is distinctly in favor of the proposition that cases like the one under consideration come within this classification. 19 Am. & Eng. Enc. Law (2d Ed.), p. 419, and cases cited in footnote 6.

This being, therefore, an appropriate case for the fixing of the actual damages by the parties in advance, the question arises whether they actually have done so in this contract. The case of *Gobble* v. *Linder*, 76 Ill. 157, is very much like the case at bar. In that case the written contract between the parties provided for an exchange of farms.

"It contained a provision, in case either one failed to make the deed in exchange at the appointed time, such party would forfeit and pay as damages to the other the sum of $1,500. Plaintiff was ready and offered to perform the agreement on her part, but, defendant having failed to make a deed as he had contracted to do, this suit was brought to recover the sum named in the contract."

The court say:

"Nothing in the agreement or attendant circumstances manifests any intention that the sum named should be treated as a penalty. On the contrary, it is more rational to presume the parties, in view of the difficulties we before suggested of making accurate proof of the damages that would flow from a breach of the contract, had adjusted in advance what would be compensatory damages to either party injured. As was said in *Peine* v. *Weber*, 47 Ill. 41:

"'Unless there is good ground for it, a court cannot declare a stipulated sum, which the parties themselves have said shall be the amount of damages, to be a penalty merely.'

"The facts in this case afford no sufficient reason for so declaring. The contract was fairly made and understandingly entered into. Considering the language employed, the nature of the contract, what the parties had contracted to do, and all the attendant circumstances, we cannot avoid the conclusion it was the intention that the sum named should be the measure of damages in case of the failure of either party to perform the agreement. As sustaining this

construction of the contract, numerous cases entitled to consideration as authority might be cited.    It will only be necessary to refer to a few most analogous—among others, the following:  *Slosson* v. *Beadle*, 7 Johns. (N. Y.) 72; *Knapp* v. *Maltby*, 13 Wend. (N. Y.) 587; *Tingley* v. *Cutler*, 7 Conn. 291; *Streeper* v. *Williams*, 48 Pa. St. 450; *Mead* v. *Wheeler*, 13 N. H. 351."

See, also, *Williams* v. *Green*, 14 Ark. 315.

In the case at bar the only circumstance which can distinguish it from the authorities cited is in the fact that the parties did not originally agree upon the damage clause, but the same was copied or taken from a form made by plaintiff's attorney for use in similar cases; and it might possibly be inferred from the testimony above set forth that the same sum ($1,000) was used by Mr. Stauffer in all cases, which might furnish ground for the contention that it was designed to secure the performance of the contract as a penalty, rather than as a statement in advance of the actual damages which should ensue in case of its violation. This clause, however, was inserted with the full and intelligent acquiescence of defendant, and, after the contract had been fully written, he retained a copy overnight, and submitted the draft to his attorney before he finally executed it.    Under the evidence in the case, the sum provided in the contract cannot be said to be excessive.    In fact, if the question had been submitted to a jury as to the actual damages which the plaintiff was entitled to recover, and the jury had believed the testimony of the defendant's witnesses as to the value of the plaintiff's farm, and had found, as they did, that there were no fraudulent representations on plaintiff's part, he would have been entitled to recover double or treble the amount fixed by the contract as the liquidated damages.    *Stewart* v. *McLaughlin's Estate*, 126 Mich. 1, 6, 7.

The defendant, prior to the making of the contract, had examined the plaintiff's farm; and, although he claims that snow and frozen soil prevented an adequate examination, from such examination as he made, and the repre-

sentations of plaintiff, he supposed he was fully informed as to the character and value of the property. The plaintiff likewise had examined the defendant's property. And the parties were better able to compute the actual or probable damages than courts or juries. The sum specified as liquidated damages was not unreasonable. The agreement was dictated by the joint action of the parties, was retained by the parties long enough to afford ample opportunity for deliberate consideration, and finally was submitted to counsel skilled in its interpretation, when it was understandingly executed. We think the agreement embodies the true intent of the parties, and should be upheld and enforced as they have made it.

We find no other assignments of error requiring discussion, and the judgment is affirmed.

MOORE, C. J., and CARPENTER, McALVAY, and GRANT, JJ., concurred.