GEIGER *v.* CAWLEY.

1. DAMAGES — LIQUIDATED DAMAGES OR PENALTY — CONTRACT — CONSTRUCTION—QUESTION OF LAW.

Whether a provision in a written contract for the sale of a business, providing that if the seller re-engage in the business contrary to its provisions he shall pay the buyer $200, provides for liquidated damages or a penalty is a question of law, to be determined by the court in construing the written contract; and not one of fact to be determined by making an inquiry into what was in the minds of the parties at the time of making it.

2. SAME—LIQUIDATED DAMAGES.

A provision in a contract for the sale of a business, that the seller shall pay $200 if he re-engage in the business at that place within five years, is a provision for liquidated damages and not for a penalty.

3. CONTRACTS—VIOLATION—ACTS AS TRUSTEE.

A contract not to engage in a certain business is violated by engaging in the business as trustee for another.

4. SAME—CONSTRUCTION—"AND" AS "OR."

A contract not to engage in the business of selling "hardware, furniture, implements, buggies and wagons," in a certain place, is violated by the promisor engaging in the business of selling hardware and agricultural implements at that place, the word "and" in the contract being construed "or," as intended by the parties.

5. LIQUIDATED DAMAGES—RECOVERY—ACTUAL DAMAGES.

Recovery may be had on a contract for liquidated damages without proof of any actual damages.

Error to Mecosta; Palmer, J. Submitted November 14, 1906. (Docket No. 45.) Decided December 3, 1906.

Assumpsit by James E. Geiger against Charles J. Cawley for stipulated damages for the breach of a trade agreement. There was judgment for defendant, and plaintiff brings error. Reversed, and judgment entered for plaintiff.

*M. Brown,* for appellant.

*Cogger & Broomfield,* for appellee.

CARPENTER, C. J.   This suit was tried in the lower court without a jury.   A finding of facts was made, and judgment rendered in favor of defendant for the sum of $202.35.   The material facts—we make this statement from the finding of the lower court—are as follows:

Prior to May 11, 1903, the plaintiff, defendant, and defendant's wife, Elizabeth Cawley, were copartners, carrying on a general hardware business, selling hardware, buggies, wagons, furniture, and farm implements at the village of Barryton, in the county of Mecosta, in this State.   On said 11th of May, plaintiff purchased from the defendant and his wife their interest in the business, agreeing to pay therefor the sum of $2,402.94, of which sum the $202.35, above mentioned, was the amount remaining unpaid, and interest thereon, when the suit was determined in the lower court.   As a part of the transaction, the following written agreement was made:

"This agreement, made this eleventh day of May, 1903, between Charles J. Cawley and Elizabeth A. Cawley, of the first part, and James E. Geiger, of the second part.   Said parties of the first part agree not to engage in the selling of hardware, furniture, implements, buggies, and wagons in Barryton, Mecosta county, Michigan, for the term of five years.   In violation of this agreement the said parties of the first part agree to pay to the party of the second part the sum of two hundred dollars; and it is further agreed that C. J. Cawley is to receive a commission of one-third of the profits on all wagons and buggies sold by him and a fair percentage on all other implements sold by him for the said J. E. Geiger.
[Signed]       "J. E. GEIGER.
                      "C. J. CAWLEY."

February 1, 1904, one Wilson, a former partner and a rival in business of said plaintiff, executed and delivered to defendant as trustee a trust chattel mortgage to secure creditors, and since that time said defendant, as such

trustee, has been engaged in selling general hardware and agricultural implements in the Wilson store in Barryton.

Plaintiff does not complain of the allowance of defendant's claim. He does complain of the disallowance of his own. In determining whether or not this disallowance was proper, we must consider several questions:

1. Was the $200 which the plaintiff promised to pay defendant stipulated damages or a penalty? The learned trial judge decided that it was a penalty. It is contended that this decision is justified by testimony brought out by an examination of the parties, showing the intent existing in their minds at the time the contract was executed. It is a complete answer to this contention to say that such testimony could not be used in determining the question. The question was one of law to be determined by the court by construing the written contract, and not one of fact to be determined by making an inquiry into the minds of the parties. That the obligation of parties to a written contract are those, and those only, contained in the writing, and that those obligations are therefore to be determined by construing the writing are elementary propositions of law. To deny them and be consistent, one must assert that it is altogether useless to make a written contract, for its terms would be quite as uncertain as if it were oral. Determining the question by construing the written contract is an easy undertaking, because the case is indistinguishable from *Jaquith* v. *Hudson*, 5 Mich. 123, where, in a masterly opinion written by Justice CHRISTIANCY, this court decided that a promise "not to engage in the mercantile business in Trenton * * * for the space of three years from this date upon the forfeiture of * * * $1,000" was a promise to pay stipulated damages.

2. Did defendant violate his contract? It is suggested that he did not violate it for two reasons: (a) Because he is carrying on business as a trustee; (b) because the business in which defendant engaged is that

of selling "hardware and agricultural implements," and not that of selling "hardware, furniture, implements, buggies, and wagons." We do not think that the circumstance that the defendant engaged in business as trustee is of consequence. His agreement "not to engage" in such business is sufficiently broad to prevent all engagements voluntarily undertaken. Had defendant desired to reserve the right to carry on business for others, he should have inserted it in the contract. Though he is carrying on business as trustee, he is nevertheless acting of his own volition, and it is to be presumed that he manages the business according to his own judgment. The consequences may be quite as serious to the plaintiff as if he were conducting this business as his own.

In *Finger* v. *Hahn*, 42 N. J. Eq. 606, it was held that a covenant of defendant "that he will not carry on a retail butcher business on his own account or operate any butcher business" was broken by his carrying on such business as the employé of another. The court saying:

"In common sense or reason, the object of every such covenant is to get rid of the competition which endangers the business of the purchasing party (the plaintiff); to remove beyond reach the influence of the vendor's (defendant's) popularity, business integrity, knowledge, or skill, and to make it impossible for personal influence and friendly considerations, arising from long-continued business acquaintance, exerting themselves to the prejudice of such purchaser."

We think it equally clear that defendant, by engaging in the business of selling hardware and agricultural implements, violated his agreement. The object of the agreement, as heretofore indicated, was to prevent defendant competing with plaintiff in the business of selling hardware, furniture, implements, buggies, and wagons. The agreement should be so construed as to accomplish this object. So construed, it obligated defendant to refrain from selling hardware, furniture, implements, buggies, or wagons in competition with plaintiff. It is possibly true that to reach this construction we read the word "and"

in the phrase "hardware, furniture, implements, buggies, and wagons" as if it were "or." That we are at liberty to do, in order to construe the agreement in accordance with the intention of the parties. *Chicago, etc., R. Co. v. Bartlett*, 120 Ill. 603.

3. It is contended that plaintiff cannot recover, because he did not prove that he suffered any actual damages in consequence of defendant's violation of the contract by engaging in business. We answer this contention by saying that the stipulation of damages relieved plaintiff from the obligation of introducing such proof.

We conclude, therefore, that plaintiff's claim for the $200 stipulated damages should be allowed, with interest thereon from February 1, 1904. This amounted (as computed by plaintiff) to $207.50, March 29, 1905, the date of the trial in the lower court. From this amount should be deducted the $202.35, the amount owing by plaintiff to defendant March 29, 1905. Plaintiff is entitled to a judgment for the balance, with interest thereon from that date, and is also entitled to costs of both courts.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.