DECKER *v.* PIERCE.

1. SPECIFIC PERFORMANCE—PENALTY—LIQUIDATED DAMAGES—RELIEF.

Under a contract of purchase and sale of a moving picture theater and outfit, containing a stipulation that the defendants should not engage in the business in the city for five years or enter into the employ of any person so engaged during a period of two years, fixing liquidated damages for a breach of the covenants at the sum of $500, the court of equity was not precluded from enforcing the agreement by a permanent injunction. Since it is only if the stipulation is for liquidated damages, that apply to the important provisions or breaches thereof, that equity declines to grant relief, the damages in the contract applying to any violation of the conditions named could not be held to be strictly liquidated damages such as bar the equitable remedy.

2. SAME—SALE—EQUITY—CONTRACTS.

Where the purchaser of the theater on the same day entered into an agreement with his son and another to sell to the latter the business so bought by complainant, but the consideration was not paid as provided thereby, and after operating the business for a short time they turned it back and abandoned the purchase, a clause in the prior contract that the obligation not to engage in business should become null and void if complainant sold the theater, did not become applicable; an actual sale, not an agreement to sell, being intended.

3. SAME—BOND—APPEAL.

Provisions in the decree suspending its operation on condition that a bond be filed by defendants, who took advantage of the option given them, were not reviewable on defendants' appeal.

Appeal from Van Buren; Des Voignes, J. Submitted January 7, 1916. (Docket No. 60.) Decided March 31, 1916.

Bill by Milton L. Decker against George Pierce and another for specific performance of a certain contract, for an injunction restraining defendants from engaging in certain business, and other relief. From a decree for complainant, defendants appeal. Affirmed.

*Glenn E. Warner* and *Victor M. Gore*, for complainant.

*W. J. Barnard* and *Earl L. Burhans*, for defendants.

STONE, C. J. This bill of complaint was filed in April, 1915, to obtain a decree for a specific performance of a contract made by the parties, and to restrain the defendants from violating such contract, and from engaging in the moving picture business in the village of Paw Paw for a period of five years from December 8, 1913, and from hiring out or working for any other parties that might engage in the said business in said village for a period of two years, from and after the said last-named date. The defendants were the owners and operators of a moving picture business, or show, known as the "Idle Hour" in the village of Paw Paw. The son of complainant, Royal E. Decker, and one Rule J. Crosbie desired to engage in the moving picture business in said village. They did not have sufficient money to purchase the business, but they carried on negotiations with defendants to purchase. It was a disputed question upon the hearing whether or not they told defendants that complainant was to purchase the business, and that they would take it over on a contract from complainant. After several interviews it was agreed that defendants were to sell the "Idle Hour" Theater and business for the sum of $1,100, and Royal E. Decker paid them $100 in cash to bind the bargain. On the next day, December 8, 1913, the defendants went to the office of the complainant for the purpose of signing the necessary papers conveying

the property and business, and to receive the balance of the purchase price. It is undisputed that complainant then and there told defendants that he was the purchaser, and that he was buying the show, and the following instrument, or bill of sale, was then signed and delivered by defendants to complainant, and the remainder of the purchase money ($1,000) was there paid to them by the complainant. That instrument was as follows:

"Know all men by these presents, that we, George Pierce and wife of the village of Paw Paw, in the county of Van Buren and State of Michigan, of the first part, for and in consideration of the sum of eleven hundred ($1,100) dollars lawful money of the United States, to us paid by M. L. Decker of Paw Paw, Michigan, of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto the said party of the second part, his executors, administrators or assigns, all the interest and title of said parties in and to a moving picture show operated by them at Paw Paw, Mich., more particularly consisting of the following: 1 Powers motion picture machine; 1 compensarck; 1 exhaust fan; 2 18 in. fans; 1 small fan; 2 water fans; 1 piano; opera chairs and all folding chairs; all electric lights; fixtures and wiring; 1 plaster curtain; 1 canvas curtain; 1 drop curtain; 5 billboards; steel ceiling; operating and ticket booths; stage and the entire front and all things pertaining to the picture show known as the 'Idle Hour.' Also the good will in and to said business. Said parties of the first part as a part of the consideration agree not to engage in a like business at Paw Paw, Michigan, for a period of five years. Said parties also agree not to hire out to or work for any other parties that may engage in a like business at Paw Paw, Michigan, during the next two years. They also warrant that the property above described is free and clear from all liens and incumbrances. In case of a violation of the restrictions placed on said parties by this contract prohibiting them from engaging or hiring in a like business at Paw Paw said damages are stipulated at $500.00; be-

longing to said George Pierce and wife and now in their possession at the Idle Hour Theater, Paw Paw, Michigan.  To have and to hold the same unto the said party of the second part, his executors, administrators and assigns, forever.  And the said parties of the first part, for their heirs, executors and administrators, do covenant and agree to and with the said party of the second part, his executors, administrators and assigns, to warrant and defend the sale of said property, goods and chattels hereby made, unto the said party of the second part, his executors, administrators and assigns, against all and every person or persons whatsoever.

"In witness whereof, they have hereunto set their hands and seals this 8th day of December, one thousand nine and hundred and thirteen.

"GEO. PIERCE.    [Seal.]
"EMMA PIERCE.  [Seal.]

"Signed, sealed, and delivered in presence of ED. M. BAILEY, ROYAL E. DECKER."

Soon after the execution of the foregoing instrument, and on the same day, the defendant Emma Pierce returned to the office of the complainant, and, after some conversation between them, the complainant signed and gave to her the following instrument:

"Dec. 8, 1913, PAW PAW, MICH.

"It is understood if I sell the picture show the obligation relative to Mr. and Mrs. Pierce starting a show shall be null and void so far as I am concerned.

"M. L. DECKER."

It is the claim of complainant that soon after the execution of the bill of sale, and on the same day, and as a part of the same transaction, and with the knowledge of the defendants, the complainant entered into an agreement with said Royal E. Decker and Rule J. Crosbie, which was as follows:

"This agreement, made this 8th day of December A. D. 1913, by and between M. L. Decker of the village of Paw Paw, county of Van Buren, State of Michigan, party of the first part, and Royal E. Decker and Rule J. Crosbie of the village of Paw Paw, county of Van

Buren, State of Michigan, parties of the second part, witnesseth:

"*First,* that said party of the first part shall and will sell to said parties of the second part, the following-described property, to wit:    The Idle Hour Theater at Paw Paw, Michigan.    For specific description reference is made to contract whereby M. L. Decker obtained title from George Pierce and wife Dec. 8, 1913.    It being the intention of said first party to convey all title received from said Pierce and wife.    It is also agreed that said M. L. Decker is to have the title and right of possession of the articles described in a bill of sale given by Rule J. Crosbie to Royal E. Decker dated the 5th day of December, 1913; said articles are stored in the Idle Hour Theater building, upon and after full payment therefor by said parties of the second part of the sum of eleven hundred ($1,100) dollars with interest at the rate of 6 per cent. per annum in manner following:    $600.00 dollars upon the execution and delivery of this agreement.    $40.00 on or before the 8th day of January, A. D. 1914, and each month thereafter until remaining payment of $500.00 and interest is paid in full.    Second parties to have right to pay more than $40.00 per month if they see fit. Each payment is to be endorsed on this contract and also receipt to be given.    With interest as above mentioned.

"*Second,* that said parties of the second part shall and will pay for said property the sum of eleven hundred ($1,100) dollars, and interest, at the time and in the manner above mentioned, at the office of M. L. Decker in the said village of Paw Paw, Michigan.

"*Third,* that the title to said property and the right of possession thereto, shall be and remain in said party of the first part until said sum of eleven hundred ($1,-100) dollars and interest, shall be fully paid.

"*Fourth,* that in case of default in any of the payments of principal or interest, when due as above specified, and for thirty (30) days thereafter, the said party of the first part shall thereupon forthwith have the right to declare this contract at an end, and to take immediate possession of said above-described property, and in such case the said property as well as all payments of principal and interest which shall have been

made hereon, shall belong to and be retained by said party of the first part as stipulated damages for non-performance of this contract on the part of said parties of the second part.

"In witness whereof, the parties hereto have hereunto set their hands and seals this 8th day of December, A. D. 1913.

"RULE J. CROSBIE.    [Seal.]
"ROYAL E. DECKER. [Seal.]

"Signed, sealed and delivered in presence of ED. HELLER, ED. M. BAILEY."

The defendants denied that they had any knowledge of the making of this last agreement. It was undisputed that no part of the $600 mentioned in the last contract was paid, except that Crosbie put in an apparatus valued at $300. No part of the monthly payments was ever made. Royal E. Decker and Rule J. Crosbie took charge of and ran the business until May 13, 1914, when they dissolved their relations, and the $300 apparatus put in by Crosbie was given back to him. The complainant, never having received anything on the contract, took back the business and property, and was the owner of them at the time of the hearing; the business being managed by his two sons. Soon after making the sale of December 8, 1913, the defendants left Paw Paw and engaged in business elsewhere; but a short time before the filing of the bill of complaint they returned to Paw Paw, and in his answer the defendant George Pierce admitted that he had rented the opera house in the village for the purpose of conducting and operating a moving picture show; that a motion picture machine had been purchased and demonstrated by him; that he had distributed handbills and posted placards announcing the opening of a moving picture show in the village, and he admitted that he was engaged in and was operating such business until enjoined by the court. After a full hearing upon the facts, the trial court entered a decree for the complainant in accordance with the

prayer of the bill. The defendants have brought the case here for review. Defendants' counsel have discussed two questions: (1) It is contended that the contract provided for stipulated damages, and that therefore a court of equity had no jurisdiction, and the bill of complaint should have been dismissed. (2) It is the contention of defendants' counsel that the agreement to sell destroyed the force of the restrictive clause in the original contract, and that it operated as a sale of the property, and made applicable the agreement signed by the complainant to the effect that if he sold the picture show business, the restrictive provisions should be null and void.

1. After a somewhat thorough examination of our decisions, we have reached the conclusion that the sum mentioned in the original contract was really a penalty. It is well that we should analyze this clause:

"Also the good will in and to said business. Said parties of the first part as a part of the consideration agree not to engage in a like business at Paw Paw, Michigan, for a period of five years. Said parties also agree not to hire out to, or work for any other parties that may engage in a like business at Paw Paw, Michigan, during the next two years. * * * In case of a violation of the restrictions placed on said parties by this contract prohibiting them from engaging, or hiring in a like business at Paw Paw, said damages are stipulated at $500."

The rule established at an early day in Michigan was the following: Where, by the terms of a contract, a sum is mentioned as "liquidated damages" for a nonperformance of several distinct stipulations of very different degrees of importance, and this sum is to be payable equally on a failure to perform the least, as of that to perform the most, important or whole of them together, it is in legal effect a penalty, and not stipulated damages; and the fixing of such a penalty by

the contract is no objection to specific performance. *Daily* v. *Litchfield*, 10 Mich. 29.

It will be observed that in the restrictive clause of the contract there are at least two stipulations of different degrees of importance. The first one was not to engage in a like business for a period of five years. Second, not to hire out to work for any other parties that might be engaged in a like business at Paw Paw during the next two years. At the time of hearing in this case the two-year period had only about six months to run. It seems to us that the stipulations here were of very different degrees of importance. If the defendants should hire out to, or work for, any other parties engaged in the moving picture business for *one week or one day*, they would forfeit the $500 as much as though they had engaged in a like business for a period of five years. It is our opinion that, although the parties have called this sum "stipulated damages," yet as it applies to several different stipulations of very different degrees of importance, and by the terms of the stipulation it would be payable equally on the failure to perform the least, as of that to perform the most, important, or the whole of them together, it is in legal effect but a penalty, and not stipulated damages, since it is evident that the parties themselves could not have treated it as a mere compensation for actual damages. *Jaquith* v. *Hudson*, 5 Mich. 123.

The real question in this class of cases is not simply what the parties intended, but whether the sum fixed upon is in fact a penalty, and this is to be determined by the magnitude of the sum in connection with the subject-matter; and where it is obvious that the principle of compensation has been disregarded, the provision as to stipulated damages contained in the contract will not be enforced. *Davis* v. *Freeman*, 10 Mich. 188; *Richardson* v. *Woehler*, 26 Mich. 90; *Johnston* v.

*Whittemore,* 27 Mich. 463; *Myer* v. *Hart,* 40 Mich. 517 (29 Am. Rep. 553); *Watrous* v. *Allen,* 57 Mich. 362 (24 N. W. 104, 58 Am. Rep. 363); *Powell* v. *Dwyer,* 149 Mich. 141-144 (112 N. W. 499, 11 L. R. A. [N. S.] 978); *Buckhout* v. *Witwer,* 157 Mich. 406, 409, 411 (122 N. W. 184, 23 L. R. A. [N. S.] 506).

Counsel for the defendants have referred us to the following cases: *Jaquith* v. *Hudson, supra; Whiting* v. *Village of New Baltimore,* 127 Mich. 66, 70 (86 N. W. 403); *Calbeck* v. *Ford,* 140 Mich. 48 (103 N. W. 516); *Geiger* v. *Cawley,* 146 Mich. 550 (109 N. W. 1064); *Ross* v. *Loescher,* 152 Mich. 386 (116 N. W. 193, 125 Am. St. Rep. 418). We have examined these cases with care, and think there is no conflict in our decisions upon the precise question involved. In our opinion the cases cited by defendants' counsel are readily distinguishable from those first above cited. It is very evident, under our authorities, that the fact that the words "stipulated damages" are used, or that the word "penalty" is used in a given case is not decisive of the question. We must look into the nature of the instrument itself to determine into which class it should fall.

2. We cannot agree with defendants' counsel that the contract which was entered into between the complainant and Royal E. Decker and Rule J. Crosbie amounted to a sale of the show, or business. It was at most an agreement to sell upon certain terms and conditions, which terms and conditions were not complied with. It is undisputed that nothing ever was paid upon the contract. The agreement was that the party of the first part "shall and will sell" upon certain terms and conditions. It was expressly provided that the title to the property and the right of possession thereof should be and remain in the complainant until the whole sum of $1,100 and interest should be fully paid. Upon breach of the contract it gave com-

plainant power to declare the contract at an end, and to take immediate possession of the property. The evidence is undisputed that nothing ever was paid upon the contract, and that complainant repossessed himself of the property.

We have read the evidence contained in this record with care, and are satisfied that the trial court reached the correct conclusion upon the facts.

The decree entered is criticized by defendants' counsel, because of the provision suspending the operation of the perpetual injunction upon the filing of a certain bond by the defendants. It certainly was optional with the defendants whether to enter into this bond or not. They having done so voluntarily, we do not think any question relating to it is presented to this court.

The decree of the court below is affirmed, with costs to the complainant.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.