**In re GELINO'S, Inc.**

No. 948–D.

District Court, E. D. Illinois.

Oct. 20, 1930.

·Gunn, Penwell & Lindley, of Danville, Ill., for trustee.

Wilbur R. Wicks, of Danville, Ill., for Lamson Co.

LINDLEY, District Judge.

On November 23, 1929, the Lamson Company, Inc., filed with the referee its claim in the above-entitled cause in the sum of $1,918.70. In due course the trustee objected thereto, and upon hearing the referee disallowed the same, except as to $100. That order is now on review before the court.

The following facts are stipulated: The claim was that of an unsecured creditor "for rental as per lease contract, copy attached." The contract referred to was executed on February 5, 1929, between the bankrupt and the claimant, and recites that the claimant, therein called owner, agrees to furnish to the bankrupt, therein called the user, installed in its store, a Preferred Cable Cash System, to be held and used for a term of ten years from the date of installation, the cost of installation and the value of the use being fixed at partial payments of $63 per quarter during said entire period of ten years. The user covenanted to make said payments. The agreement provides that if during the term thereof bankruptcy proceedings shall be commenced by or against the user, all unpaid amounts shall, without notice, be at once precipitated and become due and payable, and in addition thereto the owner may enter the premises, take possession of and remove the system and thereby terminate all rights of the user, and that the user's interest therein shall thereupon be·valued at a sum equal to 20 per cent. of the amount of the payments for the unexpired term, and this amount deducted from the user's obligation. The agreement further contained an option to buy for

the sum of $1,236, "provided that amount has been paid in accordance with the agreement."

Thereafter the cash system was duly installed, and rentals were paid for the period from February 20, 1929, to September 1, 1929. On November 5, 1929, a petition in bankruptcy was filed against the bankrupt. The claimant filed its petition for reclamation; an order was entered granting said petition, and thereupon claimant removed the same from the premises of the bankrupt and filed its claim, as aforesaid, "for rental, as per lease contract." No rental was paid for any time subsequent to September 1, 1929.

The trustee contends that it is inequitable that the claimant be allowed to recover its property and at the same time to have allowed against the general estate a claim for the entire amount of rentals unaccrued less 20 per cent. discount. The claimant insists that it has cumulative remedies, and that it may remove the property and also have its claim allowed for the unaccrued installments.

In the case of In re Miller Bros. Grocery Co., 219 F. 851, 853, L. R. A. 1916B, 1099, Ann. Cas. 1916A, 946, the Circuit Court of Appeals for the Sixth Circuit held that a contract somewhat similar to this did not furnish the two remedies. There the language was that in case the lessee became bankrupt the balance for the entire term of the lease should be considered at once due and payable, and that the lessor might enter the premises, take possession of the system, and terminate all rights and interest of the lessee. In the later case of Lamson Co. v. Elliott-Taylor-Woolfenden Co. et al. (C. C. A.) 25 F. (2d) 4, 7, 58 A. L. R. 295, the same court held that a contract identical with the one now before the court furnished cumulative remedies, commenting on the fact that apparently the claimant had changed its contract to meet the objections noted in the case first cited. However, in the case last cited the court said that "perhaps an attempt to collect the full amount of future payments without reduction to their present value and without taking into account the future maintenance which the owner escaped, would have an aspect of forfeiture; but here the claim is filed only for the minimum amount accruing if the user had exercised the most favorable option—that to the five-year cancellation," intimating that the court might have come to a different conclusion had the claimant attempted to collect the full amount of future demands.

Were this a contract of sale, with the title reserved to the vendor, there would be no question but that the assertion of all remedies now insisted upon, that is, the right to retake the property, to keep the installments paid, and to collect the unaccrued installments of the purchase price, would amount to a claim of a penalty and work a recovery by way of forfeiture contrary to law. No logical distinction appears to the court between the sale of an article and the sale of its use plus the cost of installation. The real question involved is whether a suit for recovery of unaccrued installments amounts to the assertion of a claim for liquidated damages, or to a claim for a penalty. That the Court of Appeals recognized this question as an essential part of the case appears from the language above quoted, and its holding in the case first cited, where it said that "it results that the lessor's theory savors of forfeiture of substantial rights of the lessee, and it need not be said that forfeitures are not favored."

A provision in a contract as to the sum to be paid in case of breach will, if it is a provision of liquidated damages, be enforced according to its terms. If it is a provision for a penalty, the recovery will be limited to the actual damages sustained. Illinois Surety Co. v. U. S. (C. C. A.) 229 F. 527. Whether a sum named in a contract to be paid by a party in default on its breach is to be considered liquidated damages or merely a penalty, is one of the most perplexing and difficult inquiries encountered in the construction of written agreements. Willson v. Baltimore, 83 Md. 213, 34 A. 774, 55 Am. St. Rep. 339. The question is one to be determined by the contract fairly construed. Sun Printing, etc., Ass'n v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366. Pertinent are the circumstances bearing upon the property, construction of and consideration of the instrument as a whole, the situation of the parties, the subject-matter of the contract, the magnitude of the stipulated sum as compared with the value of the subject-matter, and in proportion to the probable consequences of the breach 17 C. J. 936. It is commonly said that where it is doubtful whether the provision should be deemed for a penalty or for liquidated damages, the courts incline to regard it as for a penalty. Loudon v. Shelby County Taxing Dist., 104 U. S. 771, 26 L. Ed. 923; Tayloe v. Sandiford, 7 Wheat. 13, 5 L. Ed. 384; 17 C. J. 937.

Where the sum named in a contract to be paid on a breach is wholly disproportionate to the actual damages sustained, the courts

will deem the parties to have intended to stipulate for a mere penalty to secure performance, and not for a liquidation of the damages. In re Liberty Doll Co. (D. C.) 242 F. 695; Smith v. Copiah County (D. C.) 239 F. 425. The same situation results where it is obvious that the principle of compensation has been disregarded. Decker v. Pierce, 191 Mich. 64, 157 N. W. 384; 17 C. J. 945.

In Re Bevier Wood Pavement Co., 156 F. 583, the District Court of New York approved the holding of the referee in disallowing a claim for the amount of royalty unaccrued during the life of a patent as a penalty. This case is interesting in view of the fact that the article which constituted the subject matter of the contract under consideration was a patented article.

In the case of Northwest Fixture Co. v. Kilbourne & Clark Co. (C. C. A.) 128 F. 256, 262, the contract between two corporations provided that in case of default of either party the one in default should pay to the other $10,000 as liquidated damages. The court held that the allowance of the claim for the sum gave legal acquiescence to the collection of a penalty, and said that "in short, to permit the appellant now to share in the bankrupt's estate, pro rata with the creditors of the bankrupt, to the full extent of its claim for damages, would be to violate the spirit, if not the letter, of the agreement."

In the instant case the amount of the claim for unaccrued installments exceeds the cash value of all installments that might become due if the property were used for the entire period of ten years, if we fix the present cash value upon the basis of a 5 per cent. discount. In other words, the present cash value of all unaccrued installments calculated at a discount of 5 per cent. is $1,890, and if we consider the installments already paid, considerably less than said sum, whereas the claim is for $1,918.70, described in the claim filed with the referee as "rental." There is no evidence of damages to the claimant because of deterioration or depreciation in value of the property recovered, or of the cost of installation. The claim is merely the assertion that claimant is entitled to recover the full amount of the unaccrued installments, less a 20 per cent. so-called interest to the user. The court fails to understand how the user may have any interest whatsoever. It has no rights other than the option to buy the property, or to use the property upon payment of the installments. It acquired no title. It has no easement in the property. Obviously under the wording of the contract, and despite the fact that as time passed the bankrupt paid more and more installments, its interest became smaller and smaller, though it still had an option to buy at the same figure. There is nothing to indicate that there was any actual damage accruing to the claimant, nor to indicate that it is entitled to any compensation.

Considering the reasoning of the authorities, it appears clearly that to allow this claim is to enforce a forfeiture and to collect a penalty. Therefore, the claim will be disallowed, except as to the rental accruing from September 1, 1929, to the date of bankruptcy, November 5, 1929, $45. The matter will be remanded to the referee with directions to allow the claim for $45, and to disallow all other sums.