## In re TASTYEAST, Inc.

No. 7831.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 6, 1941.

Decided March 19, 1942.

880

Edward J. O'Mara, of Jersey City, N. J. (Wall, Haight, Carey & Hartpence and William H. Carey, all of Jersey City, N. J., on the brief), for appellant.

Max L. Rosenstein, of Newark, N. J., for appellee.

Before CLARK and JONES, Circuit Judges, and GANEY, District Judge.

CLARK, W., Circuit Judge.

Counsel in the present case have rather surprised us. The litigation arises out of a bankruptcy proceeding begun on June 25, 1940. Yet, both sides have argued[1] on the basis of the Bankruptcy Act before its amendment in 1938, 11 U.S.C.A. § 1 et seq. The debtor, a New Jersey corporation, owed the Modern Factors Company a sum of money. By March 25, 1940, this indebtedness had been reduced to $27,000. On that date the debtor delivered to Modern Factors a new note for $33,600 secured by a chattel mortgage. The consideration for the note was a renewal of the prior obligation for $27,000 plus $6,600 which was referred to as "an additional loan". Of this latter sum the debtor actually received only $3,000. The remaining $3,600 was declared to be in payment of "appraisal fees, services and finance charges and other expenses incurred in making the loan." The note and mortgage provided for the reduction of principal by payment as follows:

"Commencing April 8th, 1940 and each and every two weeks thereafter, consecutively, the sum of $400., without interest up to September 25th, 1940, at which time the unpaid balance shall become due and payable; *from and after September 25th, 1940 interest on said unpaid balance shall be paid at the rate of 2½% per month.*" Appellant's Appendix, p. 33 (italics ours)

The note, then, for the sum of $33,600 was to run for six months with prepaid interest of $3,600 or at an interest rate slightly in excess of 21% per annum. Upon failure to pay at maturity, the interest rate was to be increased to 30% per year. We can guess at the debtor's financial status from the amount of the interest which it was forced to pay. As might have been expected, three months after negotiating the loan, the debtor filed a petition for reorganization under Chapter X of the Bankruptcy Act.[2] By this time five bi-weekly payments of $400 each had reduced the mortgage to $31,600. On the maturity date the principal balance was not paid, the debtor then being in the process of reorganization and its assets in the custody of the court.

Under the reorganization plan Modern Factors was paid the principal balance of $31,600. Interest subsequent to maturity,

1 Appellant's brief pp. 5–14, 23, 24; Respondent's brief 3–5, 21, 22.

2 11 U.S.C.A. §§ 501–676.

however, was not paid at the contract rate of 30 per cent per year. Rather, the mortgagee was paid interest at the rate of 6 per cent per year and the interest in dispute, $5,645.87, was deposited with the Clerk of the ·District Court. The District Judge accepted the referee's recommendation that the disputed interest be paid to the mortgagee. From this holding the debtor has appealed, making three arguments: (1) since the claim for additional interest was not in existence at the time of filing the petition, it was a contingent liability and is therefore not provable; (2) the transaction should not be upheld because it did not involve a "present consideration"; (3) the claim of the mortgagee is in effect a penalty which a bankruptcy court should not enforce.

■ As we stated at the outset, the first two contentions of the debtor are founded upon a bankruptcy statute no longer in existence. The Bankruptcy Act of 1898 required that a debt such as is here in question could be proved only if founded upon "a fixed liability, as evidenced by a judgment or instrument in writing, absolutely. owing at the time of the filing of the petition * * *."[3] This provision, however, was amended in 1938 to include as provable "contingent debts and contingent contractual liabilities."[4] By this amendment Congress intended to bring our law into conformity with that of Canada and England.[5]

It remains to be seen whether this purpose will be accomplished, for the phraseology of the model was not followed. Under the English law "all debts and liabilities, present or future, certain or contingent" are provable.[6] Even though the debt is contingent as the debtor asserts, it is provable[7] and allowable[8] under the applicable Act.

■ In his argument concerning "present consideration" the debtor has reference to old Section 67 sub. d of the Bankruptcy Act.[9] This subdivision has been deleted and its substance incorporated in redrafted Sections 60, sub. b, 67, sub. a(3), sub. d and 70, sub. e.[10] Only once do the words "present consideration" appear in the revised provisions[11] and then with reference to a bona fide purchaser—something the mortgagee before us definitely is not. The transfer may not be set aside under the amended law because no lien has been held null and void;[12] nor was there a finding that the mortgagee had reasonable cause to believe the debtor insolvent[13] or that the transfer was without fair consideration[14] or that the transfer was fraudulent or voidable.[15]

■ The debtor's remaining argument is founded upon the contention that the claim for additional interest is a penalty.[16] A bankruptcy court is essentially a court of equity[17] and will therefore not enforce a penalty.[18] The question whether a contract to increase interest after default

---

[3] 30 Stat. 562, 11 U.S.C.A. § 103, sub. a(1).

[4] 11 U.S.C.A. § 103, sub. a(8). For the provability of contingent claims prior to the amendment see Keefe, Provability of Contingent Claims in Bankruptcy, 6 Fordham Law Review 18; Bankruptcy-Provability of Contingent Claims, 14 Virginia Law Review 469.

[5] See Sen.Rep.1916 on H.R. 8046, 75th Cong., 3d Sess. (1938) 4; House Hearings on H.R. 8046, 75th Cong., 2d Sess. (1937) 120.

[6] See English Bankruptcy Act of 1914, 4 & 5 Geo. 5, C. 59, § 30(3), as amended by Act of 1926, 16 and 17 Geo. 5, C. 7; Canadian Bankruptcy Act of 1919, § 104; see also William on Bankruptcy (15 ed. 1937) 146–180; Ringwood, Principles of Bankruptcy (17th ed. Roper, English, 1936) 169 et seq.; Duncan and Reilly, Bankruptcy in Canada, (2d ed. 1933) 536 et seq.

[7] Bankruptcy Act § 63, sub. a(8), 11 U.S.C.A. § 103, sub. a(8).

[8] The claim is ascertainable without undue delay. Bankruptcy Act § 57, sub. d, 11 U.S.C.A. § 93, sub. d.

[9] 11 U.S.C.A. § 107, sub. d, as amended in 1934.

[10] 11 U.S.C.A. §§ 96, sub. b, 107, subs. a(3), d and 110, sub. e, respectively. Concerning the reincorporation of the contents of old Section 67, sub. d, see House Report No. 1409 on H.R. 8046, 75th Cong., 1st Sess. (1937) 31–32.

[11] 11 U.S.C.A. § 107, sub. a(3).

[12] 11 U.S.C.A. § 107, sub. a(3).

[13] 11 U.S.C.A. § 96, sub. b.

[14] 11 U.S.C.A. § 107, sub. d.

[15] 11 U.S.C.A. § 110, sub. e.

[16] Section 57, sub. j of the Bankruptcy Act is not, of course, applicable. 11 U.S.C.A. § 93, sub. j.

[17] Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; Pepper v. Litton, 308 U. S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281; Securities and Exch. Comm. v. United States Realty Co., 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293.

[18] Mechanics'-American Natl. Bk. v. Coleman, 8 Cir., 204 F. 24; In re Mer-

882

is an agreement to exact a penalty[19] is one of state law and state policy. The New Jersey courts do not appear to have considered this matter. Elsewhere the decisions are by no means unanimous.[20] The parties may of course agree in advance to liquidate damages resultant from a subsequent breach. A fair construction of the contract is held to be determinative of the question whether the agreement is one to liquidate damages or exact a penalty.[21] The debtor argues that the mortgage does not provide for a penalty if the rate agreed to be paid after maturity does not exceed the highest rate prescribed by law.[22] Although the rate was 30 per cent per year, the debtor was barred from asserting usury by a New Jersey statute which removes this defense from corporate debtors.[23] Even if the debtor was not barred from pleading usury, it is apparent that this agreement is not considered usurious in New Jersey because the debtor may discharge himself from it by punctual payment of the principal.[24] It is true then that the agreement did not exceed the highest applicable rate prescribed by law. But we believe that even though the in-

creased interest rate is not usurious it nevertheless constitutes a penalty. The increase in the interest rate may be justified as a liquidated damage provision only if the amount stipulated is proportionate "to any damage reasonably to be anticipated in the circumstances."[25] We fail to find any direct relation between the increased rate and the anticipated loss which a default might have caused the mortgagee. Rather it seems to us that the mortgagee definitely intended to enforce a penalty upon the debtor. The inequality in their bargaining positions is evident since the mortgagee was able to extract a prepaid interest of approximately 21%. The debtor's overpowering economic need induced it to undertake the risk of the huge increase in interest and the possibility that it would be liable for 30% interest upon its unpaid 21% interest. As we view the transaction, both parties knew the increase was intended only to coerce the debtor into a prompt payment upon maturity. As such it was an agreement for a penalty and unenforceable in bankruptcy.

The order of the District Court is reversed.

win & Willoughby Co., D.C., 206 F. 116; In re Gelino's, Inc., D.C., 43 F.2d 832.

[19] See McCormick, Liquidated Damages, 17 Virginia Law Review 103; Brightman, Liquidated Damages, 25 Columbia Law Review 277; Damages—Liquidated Damages and Penalty, 19 Georgetown Law Journal 369; Equity—Relief Against Penalty — Distinction Between Penalty and Liquidated Damages, 6 Mississippi Law Journal 300.

[20] The authorities are collected and discussed in 12 A.L.R. 374; 21 C.J.Equity § 71; 30 C.J.S., Equity, § 55; 30 Am. Jur. Interest § 42.

[21] Sun Printing & Pub. Ass'n v. Moore, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366; Wise v. United States, 249 U.S. 361, 39 S.Ct. 303, 63 L.Ed. 647.

[22] See Close v. Riddle, 40 Or. 592, 67 P. 932, 91 Am.St.Rep. 580.

[23] N.J.S.A. 31:1-6. See Ovsiovitch v. Federal Tool & Mfg. Co., 94 N.J.Eq. 744, 121 A. 671.

[24] Ramsey v. Morrison, 39 N.J.L. 591. Although this case was decided in 1877, it appears to be the only decision in point. It is cited for another proposition in Hildinger v. Bishop, 126 N.J.Eq. 334, 340, 8 A.2d 813, 817. See also Provision For Interest After Maturity At A Rate In Excess of Legal Rate As Usurious, 82 A. L.R. 1213; 66 C.J. Usury § 121.

[25] Kothe v. R. C. Taylor Trust, 280 U. S. 224, 226, 50 S.Ct. 142, 143, 74 L.Ed. 382.