WOLVERINE FARMS CO. *v.* DE YOUNG.

EMERY *v.* DE YOUNG.

BROKERS — APPEAL AND ERROR — CONTRACTS — COMPENSATION — VENDOR AND PURCHASER—COMMISSIONS.

> Evidence tending to show that plaintiff, a firm of brokers, agreed to effect an exchange of defendant's stock of hardware and a store building for other property for a stated commission; that a contract of exchange was executed but never carried out, contradicted by the testimony of defendant that the commission was to be paid if the deal went through, but not otherwise, *held,* to present a question of fact for the jury, as to the right to commissions; but both parties acquiescing in the statement of the trial court that it was agreed he should direct a verdict one way or the other, plaintiff could not complain or review a verdict directed against it.

Error to Montcalm; Davis, J. Submitted April 24, 1914. (Docket No. 134.) Decided July 25, 1914.

Assumpsit by John G. Emery and John L. Bailey, copartners as the Wolverine Farms Company, against Cornelius De Young for broker's commissions. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Smedley, Linsey & Lillie,* for appellant.

*L. C. Palmer,* for appellee.

STONE, J. The plaintiffs, John G. Emery and John L. Bailey, copartners, doing a real estate business, at Grand Rapids, under the name of Wolverine Farms Company, brought this suit to recover from the defendant a commission of $200.

The declaration contains a special count and also the common counts in assumpsit. The plaintiffs claim to have acted as middlemen in bringing together the

defendant and one Stewart M. Rose, and that, by reason of the services of plaintiffs, the defendant and Rose came to an agreement and entered into a written contract in and by which said Rose agreed to trade a farm to the defendant in exchange for a stock of hardware and a store building owned by defendant.

The contract which the plaintiffs claim to have been instrumental in causing to be made was as follows:

"CRYSTAL, MICH., Feb. 11, 1913.

"It is hereby agreed between Cornelius De Young of Crystal, Michigan, party of the first part, and Stewart M. Rose of Rockford, Michigan, party of the second part. Witnesseth: The party of the first part agrees to buy from the second party his farm in Cannon township containing 239 acres of land at $55.00 per acre. The party of the first part is to sell to the party of the second part all of his stock of hardware, implements, tools and store fixtures, at invoice price with freight and cartage added, damaged goods at actual value, stock to be inventoried at fair inventory, also hardware store building and land commencing at a point midway between the store and bank, thence west to the line, thence south and east to beginning. Consideration three thousand dollars. Exchange to be made by February 20th.

"CORNELIUS DE YOUNG.
"STEWART M. ROSE."

It is not claimed that either of the plaintiffs was present when the above contract was reduced to writing, but Mr. Bailey, one of the plaintiffs, had introduced the parties, and claims to have brought about the contract. The parties to the contract had exchanged visits, the properties had been examined, and the negotiations had resulted in the above contract of February 11, 1913. The contemplated inventory of stock was not made, and shortly after the date of the contract the defendant notified Mr. Bailey, one of the plaintiffs, that he would not make the deal, and the trade fell through. Upon the subject of commissions due the plaintiffs, Mr. Bailey testified that at the first

meeting of the parties to the contract, and as they were about to separate, he told defendant that plaintiffs' commission would be 2½ per cent. on the value of defendant's sale, for him to pay, and that defendant said, "Well;" and that witness told Mr. Rose that he would have to pay 2½ per cent. on the property he was selling. He further testified that Rose and defendant thought the above-named commission was too high, and that the last-named parties got together and agreed to pay plaintiffs $400; one-half to be paid by Rose and one-half by the defendant. On direct examination of Mr. Bailey the following testimony was given:

"The last commission I was asking was $400; $200 to be paid by each.

"Q. Now, do you know whether or not that was conveyed to Mr. De Young, that information?

"A. Yes, sir. He told me so himself.

"Q. To whom did you make the reduction in the first place?

"A. To Mr. Rose. I think that reduction was made the 12th of February. It was the day before Mr. Rose went up there the last time.

"Q. Now, what was the talk with Mr. De Young when you were to have the $400? When were you to have the $400?

"A. It was due when they came to an agreement to trade. I never received the $200. I made a demand on Mr. De Young for my commission. I sent him a registered letter. It is dated March 13, 1913. I never received a reply from Mr. De Young.

"Q. Did you have anything to do with fixing the price of the stock of hardware or the farm?

"A. No, sir.

"Q. Who was to make the arrangement of the prices, and so on?

"A. Mr. Rose made the price on his farm, and Mr. De Young made the price on his stock and store. It was to be an invoice price.

"Q. Did you have anything to do about making the

price or attempting to get a good price for either party?

"*A.* No, sir."

On cross-examination Mr. Bailey testified:

"*Q.* As a matter of fact, you did not understand you were entitled to any commission unless Rose and De Young made an absolute agreement to exchange their properties?

"*A.* Yes, sir.

"*Q.* You expected it anyway, whether they traded it or not?

"*A.* We expected our commission when the parties agreed to trade, when we had done our part."

Stewart M. Rose was called as a witness by the plaintiffs, and after testifying to the visits and examination of the properties, and referring to defendant's visit to see the farm, he said:

"We had a talk about the commission. Mr. De Young thought it was too much, and I thought it was too much.

"*Q.* What was too much?

"*A.* Two and a half per cent.

"*Q.* To be paid by whom?

"*A.* Each of us, on the valuation of our property.

"*Q.* When was it to be paid?

"*A.* Nothing said about that just then.

"*Q.* Do you know?

"*A.* I supposed when I made the trade.

"*Q.* When you made the agreement?

"*A.* Yes, sir. We both agreed that it was too much.

"*Q.* Anything said about seeing Bailey and getting it reduced?

"*A.* Yes, I said I would go and see Mr. Bailey and get it reduced. De Young said, 'All right.' Afterwards I saw Bailey. Mr. Bailey reduced it and agreed to take $400; each to pay one-half. After that I saw Mr. De Young. I saw him the day we signed the contract, February 11, 1913.

"*Q.* At that time was there any talk about the commission Mr. Bailey was to receive?

"*A.* I told De Young what Bailey said, and, if I

understood him, he said, 'All right.' I told Mr. De Young Mr. Bailey would take $200 apiece. I think De Young said, 'All right.' That was before we made the contract. We had this talk in the store. * * *

"*Q.* Was the deal carried out and completed and the properties exchanged?

"*A.* It was not.

"*Q.* Why?

"*A.* I got a telephone from Mr. Bailey, and he said it was all off. I was ready and willing to carry out my part of it in every respect and exchange the properties. I was ready and willing to carry out, up to and including the 20th of February. I was able to carry out the deal."

The plaintiffs called the defendant for cross-examination. After testifying as to the value of his stock and the reasons why the trade did not go through, and that he never paid plaintiffs any commissions, the following occurred:

"*Q.* You did not pay them 2½ per cent. of the $16,000?

"*A.* I did not calculate I owed them.

"*Q.* You did not pay them $200 afterwards?

"*A.* I did not.

"*Q.* You knew that was what they were expecting, $200?

"*A.* That was not the agreement between Mr. Bailey and me. Bailey and I did not have any agreement.

"*Q.* Why did you say it was not the agreement made between you and Bailey?

"*A.* It was not the way he talked to me. I went over and visited the farm of Mr. Rose.

"*Q.* And you and Rose talked then that 2½ per cent. was too much?

"*A.* Yes, sir.

"*Q.* And Mr. Rose said he would go and see Bailey?

"*A.* Yes, sir.

"*Q.* And when he came up there to draw up the contract he informed you he had seen Bailey?

"*A.* He did.

"*Q.* And he informed you Bailey would take $400?

"*A.* Yes, sir.

"*Q*. And he informed you you were to pay one-half of it, and he one-half of it; that was satisfactory to you?

"*A*. Yes, if the deal went through.

"*Q*. And you never paid that $200?

"*A*. I did not."

We have quoted enough of the testimony to show that the parties did not agree as to when the commission was to be paid, if at all; the plaintiffs claiming that it was to be paid when the agreement for an exchange of properties was made, and the defendant testifying that it was to be paid when "the deal went through," and that it never went through. A question of fact was here presented for the jury. There was a conflict in the evidence also as to the reason why the trade did not go through. With the evidence in this condition, both parties claimed the right to a directed verdict. The court, after stating, in the presence of counsel, to which there was no objection, that "both parties ask for a direction of a verdict," directed a verdict for the defendant, and accordingly a verdict and judgment were entered for the defendant.

The plaintiffs have brought the case here for review, and errors are assigned:

(1) That the court erred in refusing to grant plaintiffs' motion to direct a verdict in their behalf.

(2) That the court erred in granting defendant's motion to instruct the jury to render a verdict for defendant for the reason that plaintiffs had offered no testimony showing a legal liability on the part of defendant.

An examination of the record satisfies us that the court did not err in refusing to direct a verdict for the plaintiffs, and they are not in a position to complain because the court did not submit the case to the jury. We have held that where, at the close of the testimony in a case, each party claimed that a verdict should be directed in his favor, and the court said to the jury

that it seemed to be agreed that it was the court's duty to direct a verdict one way or the other, to which statement no exception was taken, the defeated party could not urge on appeal that there were questions of fact on which he was entitled to go to the jury. *St. Mary's Power Co.* v. *Water-Power Co.*, 133 Mich. 470-478 (95 N. W. 554) ; *Peterson* v. *Mahon* (N. D.), 145 N. W. 596.

This renders it unnecessary for us to consider the other questions discussed by counsel, as we find no error in relation to the admission of testimony.

The judgment of the circuit court is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.