JONES *v.* STAINTON.

1. NAMES—FICTITIOUS NAMES—CONTRACTS—ENFORCIBILITY— STATUTES—RECORDING NAME.

In an action for damages for the breach of a contract, which plaintiff signed binding himself individually, the objection that it is not enforceable because he was doing business under an assumed or fictitious name in violation of Act No. 101, Pub. Acts 1907 (2 Comp. Laws 1915, § 6349 *et seq.*), is without force, although in the introductory paragraph the contract described him as general manager; the undisputed evidence showing that he owned and managed the business.

2. CONTRACTS—MUTUALITY—RIGHT TO CANCEL.

Where the contract did not provide, either expressly or inferentially, that plaintiff might cancel it at his pleasure by simply paying back the advance payment, it was not

lacking in mutuality because providing for the return of the advance money if plaintiff failed to perform.

3. DAMAGES—BREACH OF CONTRACT—GUARANTY—PERFORMANCE.

Defendants, in an action for damages for breach of a contract for a Chautauqua Assembly, could not complain of the action of the trial court in limiting plaintiff's damages to $250, the amount of the guaranteed advance sale of tickets, on the ground that said guaranty anticipated performance, since said guaranty only emphasized defendants' obligation to pay the consideration inducing the opposite party to make the contract.

4. SAME—STIPULATED DAMAGES—PENALTY.

Nor can said amount be said to be so grossly in excess of possible or actual damages as to amount to a penalty; and it was proper, in view of all the circumstances, to treat it as the stipulated amount of liquidated damages in case of nonperformance by defendants.

Error to Van Buren; Des Voignes, J. Submitted October 11, 1917. (Docket No. 88.) Decided March 28, 1918.

Assumpsit by C. Durant Jones, doing business as the Jones Chautauqua System, against F. J. Stainton and others, as the Lawton, Michigan, Chautauqua Association, for breach of an entertainment contract. Judgment for plaintiff. Defendant brings error. Affirmed.

*Thomas J. Cavanaugh,* for appellants.

*W. J. Barnard* and *H. G. Giddings,* for appellee.

STEERE, J. Plaintiff recovered a verdict and judgment against defendants for breach of a written contract between the parties, dated October 17, 1913, providing for a Chautauqua entertainment, or assembly, to be furnished by him at the village of Lawton during the season of 1914, the material portions of which are as follows:

"This contract made this 17th day of October, 1913, by and between C. Durant Jones, general manager of the Jones Chautauqua System of the city of Perry,

Iowa, party of the first part, and the Lawton, Michigan, Chautauqua Association of the city of Lawton, Michigan, party of the second part, witnesseth:

"The said party of the first part agrees to furnish a Chautauqua assembly for the term of six consecutive days during the Chautauqua season of 1914. It is agreed that the program shall consist of vocal and instrumental musical numbers, popular and prohibition lectures and other entertainments such as are usually found in Chautauqua programs and that there shall be a change of talent each day except Sunday.

"The party of the first part agrees to furnish talent, big tent, platform manager and assistant, and pay their expenses and to furnish the necessary advertising matter and tickets except local newspaper advertising. * * *

"The said parties of the second part agree to pay unto the party of the first part for the purpose of securing the Chautauqua assembly the sum of $250 as a guaranty. Twenty-five dollars of this amount shall be paid on the date of closing this contract and the remainder of $225 on the opening day of the assembly. It is further agreed that if the said party of the first part fails to furnish the Chautauqua assembly as agreed above the $25 advance payment is to be refunded to the said parties of the second part.

"And the said parties of the second part further agree that the advance sale of season tickets shall not fall below $250 which shall form the guaranty named above. * * *

"Said parties of the second part agree to push vigorously the sale of season tickets for the assembly, to furnish grounds conveniently located for the tent, without expense to the said party of the first part, advertise in local papers, to furnish lights, seats, platform and piano and piano accompanist for the musical numbers."

Plaintiff declared specially upon this contract with the common counts in assumpsit added.

Defendants pleaded the general issue, with special notices which present the defenses:

That the contract was procured by false representations as to the character of the talent which was to be furnished by plaintiff.

That the contract was with a ficititous person, as plaintiff was doing business under the name of The General Chautauqua System of Perry, Iowa, without having complied with the provisions of Act No. 101 of the Public Acts of 1907 (2 Comp. Laws 1915, § 6349 *et seq.*).

That the contract was unilateral, not mutually binding between the parties and therefore unenforceable.

We see no force in the contention that the contract is not enforceable because plaintiff was doing business under an assumed or fictitious name in violation of the statute. While the contract in its introductory paragraph states that it is "By and between C. Durant Jones, General Manager of the Jones General Chautauqua System, of the city of Perry, Iowa, party of the first part, and the Lawton, Michigan, Chautauqua Association, of the city of Lawton, Michigan, party of the second part," it is signed by "C. Durant Jones, party of the first part" (by his authorized agent), and defendants, 13 in number, as parties of the second part, in their individual names and capacity. By its express terms C. Durant Jones, as party of the first part, is personally obligated in his own name on the one hand, and defendants in their individual names, as parties of the second part, are obligated on the other hand. It is undisputed that plaintiff is an actual person, of Perry, Iowa, and C. Durant Jones is his true name; that he both managed and owned the so-called Jones Chautauqua System, or business, in relation to which he contracted, and that C. B. Rayhill, his soliciting agent, was authorized to negotiate the contract and execute it for Jones and in the latter's name. The introductory designation in the contract of the parties of the first part and second part is merely descriptive.

Defendants' contention that the contract is unilateral and void for lack of mutuality is directed to the provision that "if the said party of the first part fails to furnish the Chautauqua Assembly as agreed above

the $25 advance payment is to be refunded to said parties of the second part." It is urged that this reserves to the first party the right to abandon the contract at any time and refuse to furnish the assembly by simply returning the $25 which he had received from the second parties, while no mutual right to withdraw was reserved to the latter.

The contract contains numerous reciprocal promises to perform and respective undertakings of the contracting parties stated in detail, involving mutual assent, a consideration and the element of agreement. The $25 in advance was paid by defendants as agreed. There was part performance. The contract nowhere provides in express terms, nor inferably suggests, that plaintiff can thereafter cancel it at his pleasure by simply paying back the $25, unless it is to be read into his bare agreement to refund the advance payment if he fails to do as he otherwise contracted without qualification. It may be conceded as counsel contend that this stipulation is otherwise superfluous, for plaintiff would be obliged without it to return the money if he did not perform on his part, but he would be compelled to pay it to defendants because he breached the contract, as manifest minimum damages for such breach. The contract is in its form and provisions plainly bilateral and mutually obligatory; at most the agreement on plaintiff's part to pay back the advance payment is a lamely worded attempt to provide stipulated damages for breach of the contract by him.

Defendants' claim that the contract was procured by false representations as to the character of talent which was to be furnished is more particularly within the range of facts. It was solicited and procured by C. B. Rayhill who was in plaintiff's employ as agent to promote local Chautauqua associations and secure contracts with them for the so-called Jones Chautau-

qua systems which plaintiff owned and managed. To that end he visited Lawton, in October, 1913, where he worked up sufficient interest and enthusiasm amongst certain of its citizens to effect a local organization to promote the project of an assembly and program of entertainment there for the following season, securing the contract in question. One or more meetings were held, officers were elected, including a secretary, treasurer and manager, and letter-heads of the association were printed. For manager Elder J. W. Pincombe was selected, who had taken a somewhat active interest in the matter and assisted Rayhill in securing the signatures of others to the contract. He states that "at his (Rayhill's) suggestion I was to act as secretary for the association." He later received from plaintiff letters, advertising matter, cuts, tickets, etc. He testified that he made efforts to secure ground to pitch a tent, which was arranged for early in the season, and tried to sell tickets, with what success he does not state, and that he delivered the cut sent him to the local paper, into which he thought some advertising matter went. He also eventually wrote the Jones Chautauqua system that it was desired the assembly be held between the 1st and 10th of August. The 5th of August was the time eventually designated. As to the alleged fraudulent representations, certain of defendants testified that when soliciting signatures Rayhill gave assurance the talent for the entertainments would be of a high class, telling one witness "as good as you would hear in Paw Paw," that it was the first appearance of the Jones people in Michigan and the price proposed was cheap because they planned to have assemblies in the nearby towns of Bangor, Decatur and Bloomingdale, with other promissory laudation of the proposed entertainments by which defendants were persuaded to sign the contracts.

After Rayhill's departure in the fall of 1913, all active local interest and effort in the project was apparently confined to Elder Pincombe until after the Bangor assembly, which opened June 27, 1914, had been held. He visited Bangor on the last day of its Chautauqua and learned that plaintiff's program of entertainment was not satisfactory nor the assembly a success. He testified that he talked with the manager in charge who told him amongst other things, "this program should never have been sold to these towns," that he would write the Jones people about it, saying "and you do the same and see if some better program cannot be secured." On his return to Lawton a meeting of defendants was called where the matter was discussed, a letter was written to the Jones people commenting adversely on the Bangor program and dissatisfaction resulting, indicating defendants were not disposed to be sponsors for such an entertainment at Lawton, to which Jones replied at some length, admitting that certain days of that assembly were not a success, which he claimed was unavoidable owing to sickness and unexpected absence of certain of his better entertainers, necessitating substitutes, giving assurance that the deficiencies in talent had been remedied and they proposed to make good by putting on an entertainment at Lawton which would be worth "all the people pay for it and more too." After receipt of this letter counsel was consulted by defendants and a notice sent that the committee had not changed its attitude, declaring the contract at an end. On July 28th Jones wrote the secretary that every defect in the program had been eliminated, that the company had been strengthened by additional talent and they intended to make good at Lawton in every way.

In time before August 5th to erect the tent and make proper preparation plaintiff shipped a tent and other

equipment for the assembly to Lawton, sending his platform manager and assistant manager there, but defendants declined to co-operate with or assist them in any way, objecting, as the assistant manager testified, to their going ahead or putting up their tent. They were followed by the entertainers, or so-called talent, in time for the opening, who remained during the balance of the appointed week, and the organization remained there ready to fulfil, with defendants' assistance, as was claimed, during the time arranged for under the contract. Jones testified, against defendants' objection, that the persons were regularly in his employ at so much per week, that he stood ready and offered to fully perform the contract on his part, and his total expenses of booking the town of Lawton, advertising, freight, fare and costs for the assembly week were $438.71, all of which he paid out.

The trial court held the contract between the parties bilateral and not revocable at the option of either party, that it was not made by Jones under an assumed or fictitious name in violation of the statute upon that subject.

The questions of fraudulent representation, compliance with the contract on plaintiff's part so far as permitted by defendants and tender of performance, were tried out as issues of fact and submitted to the jury with full instructions. Defendants made seasonable objections, motions, etc., to save all questions raised, and when the court held it a case for the jury upon the issues above indicated, propounded two special questions for their determination which, with their answers, are as follows:

"(1) Did the plaintiff tender to the defendants before he received notice of cancellation about July 16th, a program which consisted of vocal and instrumental musical numbers, popular and prohibition lectures and other entertainments such as are usually found in Chautauqua programs before the contract was renounced by the defendants?

"Answer. Yes.

"(2) Did the plaintiff tender to and furnish the defendants at the village of Lawton a Chautauqua program consisting of vocal and instrumental musical numbers, popular and prohibition lectures and other entertainments such as are usually found in Chautauqua programs?

"Answer. Yes."

Although the court admitted evidence of plaintiff's expenses in preparing for and attempting to carry out the contract on his part "subject to instruction later on," defendants having objected "for reasons heretofore stated" and because "we are not responsible for any expenses after this contract was rescinded," in construing the contract and instructing the jury the court held that there could be no recovery beyond defendants' guaranty as specified in the agreement, which expressly provides that the "parties of the second part agree to pay unto the party of the first part for the purpose of securing the Chautauqua assembly the sum of two hundred and fifty dollars ($250) as a guarantee," directing the jury that if they found in favor of plaintiff upon the issues submitted to them he would be entitled to recover, and they should award him as damages that amount less the $25 previously paid.

It is contended for defendants that this was error because the provision quoted is directed to anticipated performance on both sides, as shown by a later provision that the second parties "further agree that the advance sale of season tickets shall not fall below $250 which shall form the guarantee above named," and it is said "there was no guaranty that defendants would pay any stipulated sum if they repudiated or renounced the contract, so that the plaintiff is relegated to its (his) remedy for a breach of the contract" to establish by his proofs as an issue of fact for the jury his damages under appropriate rules of

law, in relation to which authorities are cited. With this view we are unable to concur. Undoubtedly it was anticipated there would be performance of all the mutual obligations assumed by the contract on both sides, but the express agreement by defendants to pay a specified sum of a certainty, as a manifest consideration and inducement for the opposite party to make the contract is only emphasized in view of the subject-matter and nature of the contract by the provision that selling season tickets for the entertainment to that amount will operate and be accepted as fulfillment of the guaranty, in further explanation of which the contract provides for a division of proceeds between the parties after plaintiff has realized a certain sum in excess of the $250. The word "guarantee" in the connection used is not a technical application and only signifies a warranty or unqualified and emphasized promise to pay. This is clearly of that class of contracts where the actual damages for a breach, or unlawful repudiation, even aside from gains prevented, are difficult to ascertain and uncertain in their nature. In *Crisdee* v. *Bolton*, 3 C. & P. 240, Best, C. J., said of liquidated damages in lieu of performance:

"I think that the parties to contracts, from knowing exactly their own situations and objects, can better appreciate the consequences of their failing to obtain those objects than either judges or juries. Whether a contract be under seal or not if it clearly states what shall be paid by the party who breaks it to the party to whose prejudice it is broken, the verdict in an action for the breach of it should be for the stipulated sum."

And our early case of *Jaquith* v. *Hudson*, 5 Mich. 123, 137 (cited in *Whiting* v. *Village of New Baltimore*, 127 Mich. 66), contains the settled rule thus clearly stated, Justice CHRISTIANCY speaking for the court:

"There are great numbers of cases, where, from the

nature of the contract and the subject-matter of the stipulation, for the breach of which the sum is provided, it is apparent to the court that the actual damages for a breach are uncertain in their nature, difficult to be ascertained, or impossible to be estimated with certainty, by reference to any pecuniary standard, and where the parties themselves are more intimately acquainted with all the peculiar circumstances, and therefore better able to compute the actual or probable damages, than courts or juries, from any evidence which can be brought before them. In all such cases, the law permits the parties to ascertain for themselves, and to provide in the contract itself, the amount of the damages which shall be paid for the breach."

It cannot be said in view of the nature of this contract and the matter to which it relates that the sum unconditionally agreed to be paid "for the purpose of securing the Chautauqua assembly" is so grossly in excess of possible or actual damages as to lose sight of the element of compensation and stand purely as a penalty. As evidenced by the entire agreement, in the light of the circumstances under which it was made as disclosed by the testimony, the provision in question is to be construed to have intended the stipulated amount to be as liquidated damages in case of nonperformance by defendants.

While numerous assignments of error not directly reviewed here are launched against the rulings of the court during the progress of the trial and charge to the jury, they are for the most part, in essentials, contingent upon and disposed of by the controlling questions of law which have been discussed and passed upon, or by the answer to special questions and verdict of the jury. Though not reviewed in detail they have been considered and the conclusion reached that they present no prejudicial errors demanding reversal.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.