SUPERIOR STEEL SPRING CO. *v.* NEW ERA SPRING & SPECIALTY CO.

1. DAMAGES — STIPULATED DAMAGES — CONTRACTS—BREACH—COMPENSATION.

In cases where it is difficult to accurately determine the damages which one party may suffer by the failure of the other to perform his contract, the parties themselves may agree upon such sum as in their judgment will be ample compensation for the breach.

2. SAME—REASONABLE COMPENSATION.

A provision in a contract entered into in April, 1918, for the sale of 10,000 automobile springs, that the seller would pay the buyer 25 cents per spring as stipulated damages for delay in shipments, *held*, under the abnormal business conditions existing at that time, not a penalty but a reasonable compensation for the actual damages suffered.

3. APPEAL AND ERROR—CONTRACTS—MUTUALITY.

The question of mutuality, not having been raised in the trial court, is not properly before this court, on error.

4. SAME—REQUEST FOR DIRECTED VERDICT—RIGHT TO VERDICT OF JURY.

Where plaintiff asked for a directed verdict, to which it was not entitled because the testimony was conflicting, on the ground that defendant, by its conduct, had waived the provisions of the contract for stipulated damages and was therefore estopped from making said defense in an action on the contract for the balance due, it cannot now complain that the question was not submitted to the jury although, had it so desired or requested, it was entitled to take the verdict of the jury thereon.

Error to Kent; McDonald (John S.), J.  Submitted June 11, 1921.  (Docket No. 11.)  Decided October 3, 1921.

Assumpsit by the Superior Steel Spring Company against the New Era Spring & Specialty Company for a balance due.  Judgment for defendant on a directed verdict.  Plaintiff brings error.  Affirmed.

*Willis B. Perkins, Jr.,* for appellant.

*Smedley, Linsey & Shivel,* for appellee.

FELLOWS, J.  Plaintiff, located at Mt. Clemens, manufactures automobile springs.  Defendant, located at Grand Rapids, is a large dealer in them.  In April, 1918, by a proposal and an acceptance of it they entered into a contract for 10,000 Ford springs.  The price was $1.25 each.  The parties appear to have had previous business relations.  At the time the contract was made plaintiff had two carloads of steel on track at Mt. Clemens which it needed the money to pay for and got in touch with defendant.  Defendant paid the entire contract price for the 10,000 springs in advance by its notes which were discounted by plaintiff at Mt. Clemens and which were paid by defendant when due.  By the contract 2,500 springs were to be delivered each week for the weeks ending

April 27th, May 4th, May 11th, and May 18th.    The proposal which was accepted contained the following:

"We will thus pay in advance as per the terms on the order, for both the steel or material and profit on ten thousand springs.    It is done with the distinct understanding that you are to produce the springs by the date specified and on any such orders you fail to have ready for shipment, you will pay us 25 cents per spring, as a portion of our lost profit, if we so elect."

On May 18th, the final day agreed upon for the completion of the contract, less than 2,000 springs had been delivered, and the full amount was not delivered until June 29th.    About this time arrangements were made for 1,500 more springs at the same price and soon thereafter for 400 more at $1.45 each.    On these later arrangements 1,903 springs were delivered.    To recover the amount due for them this action is brought.    It was met by the defendant by insisting that there was due to it from the plaintiff under the clause of the contract above quoted more than the amount of its indebtedness to the plaintiff, and the case in the court below turned quite largely on the question of whether the provision was one for stipulated damages or for a penalty.    Other questions were raised to which we shall presently refer.    Plaintiff does not deny that it failed to deliver the springs in accordance with the terms of the contract, and the testimony of its secretary fairly disclosed that such failure was due to its filling other contracts.    Nor is it denied that defendant had numerous orders which it had obtained for springs canceled by reason of such failure.

Counsel for both parties have been most diligent in their research, and have called to our attention a large number of our own cases together with numerous authorities from other jurisdictions.    As this court

has, we think, conclusively settled the question here involved we shall confine our attention to our own cases.

In the early case of *Jaquith* v. *Hudson,* 5 Mich. 123, Mr. Justice CHRISTIANCY, who wrote for the court, in a masterly and exhaustive opinion fully considered the question and laid down the rule for the consideration of contracts of this character which have been consistently adhered to by this court ever since. After pointing out the reasons and principles which justify the courts in holding that penalties as distinguished from stipulated damages may not be enforced, he says:

"But the court will apply this principle, and disregard the express stipulation of parties, only in those cases where it is obvious from the contract before them, and the whole subject-matter, that the principle of compensation has been disregarded, and that to carry out the express stipulation of the parties, would violate this principle, which alone the court recognizes as the law of the contract."

And in considering the classes of cases he said:

"But, secondly, there are great numbers of cases, where, from the nature of the contract and the subject-matter of the stipulation, for the breach of which the sum is provided, it is apparent to the court that the actual damages for a breach are uncertain in their nature, difficult to be ascertained, or impossible to be estimated with certainty, by reference to any pecuniary standard, and where the parties themselves are more intimately acquainted with all the peculiar circumstances, and therefore better able to compute the actual or probable damages, than courts or juries, from any evidence which can be brought before them. In all such cases, the law permits the parties to ascertain for themselves, and to provide in the contract itself, the amount of the damages which shall be paid for the breach. In permitting this, the law does not lose sight of the principle of compensation, which is the law of the contract, but merely adopts the computation or estimate of the damages made by the parties, as being the *best* and *most certain* mode

of ascertaining the actual damage, or what sum will amount to a just compensation. The reason, therefore, for allowing the parties to ascertain for themselves the damages in this class of cases, is the same which denies the right in the former class of cases: viz., the courts adopt the best and most practicable mode of ascertaining the sum which will produce just compensation."

After fully considering the question and taking up the case then before the court, he said:

"The damages to arise from the breach of this covenant, from the nature of the case, must be not only uncertain in their nature, but impossible to be exhibited in proof, with any reasonable degree of accuracy, by any evidence which could possibly be adduced. It is easy to see that while the damages might be very heavy, it would be very difficult clearly to prove any. Their nature and amount could be better estimated by the parties themselves, than by witnesses, courts, or juries. It is, then, precisely one of that class of cases in which it has always been recognized as peculiarly appropriate for the parties to fix and agree upon the damages for themselves."

In *Calbeck* v. *Ford*, 140 Mich. 48, Mr. Justice BLAIR, speaking for the court, quoted fully from the *Jaquith Case*, and said:

"This case has been frequently referred to with approval, and is a clear and authoritative statement of the rule as expounded by this court. Applying the principles above stated to the facts of this case, it appears to us that the case falls within the classes referred to in the second class, where, from the nature of the contract and the subject-matter of the stipulation, it is apparent that the actual damages for a breach are uncertain in their nature, difficult to be ascertained, or impossible to be estimated with certainty by reference to any pecuniary standard. The weight of authority is distinctly in favor of the proposition that cases like the one under consideration come within this classification."

And in *Ross* v. *Loescher*, 152 Mich. 386, Mr. Justice GRANT said:

"In cases where it is difficult to accurately determine the damages which one party may suffer by the failure of the other to perform his contract, the parties themselves may agree upon such sum as in their judgment will be ample compensation for the breach."

The following cases among others will be found to have consistently followed the rules announced in the *Jaquith Case: Western Gas Construction Co.* v. *Dowagiac Gas & Fuel Co.*, 146 Mich. 119 (10 Ann. Cas. 224) ; *City of Detroit* v. *Telephone Co.*, 135 Mich. 696; *Germain* v. *Stanton School District*, 158 Mich. 214; *Axe* v. *Tolbert*, 179 Mich. 556, 565; *Randall* v. *Randall*, 37 Mich. 563; *Whiting* v. *Village of New Baltimore*, 127 Mich. 66; *Geiger* v. *Cawley*, 146 Mich. 550; *Jones* v. *Stainton*, 200 Mich. 694.

In the instant case the parties were dealing in a period when abnormal conditions existed in the business world. Both were familiar with these conditions; both knew the rapid fluctuations in the price of steel and the difficulty of getting it at all; both knew that defendant was an extensive dealer with many customers in all parts of the country; both understood that prompt deliveries must be made by defendant to its customers or cancellation of orders were liable to follow, entailing not only loss of immediate profits and immediate business, but also loss of future business and loss of its trade which was then well established. (Some four pages of the record are taken in detailing canceled orders due to plaintiff's failure to make deliveries.) The amount of damage for loss by cancellations and loss of business would be difficult if not impossible to prove. While some of the elements of defendant's damages might be susceptible of proof, others were not. There is nothing in the record indicating that the sum agreed upon was in any way

in excess of the actual damages suffered by defendant. Indeed, a quick rise in the price of steel compelled plaintiff to charge 20 cents more apiece for the last 400 springs than it had for the others.  Under the facts disclosed upon this record and having in mind the rules laid down in the *Jaquith Case*, we are persuaded that it was permissible for the parties to agree in their contract upon the compensation to be paid upon the breach of this one important feature of it. The stipulated damages were not payable upon different breaches of the contract of varying degrees of importance, but were confined to the one important feature, that of prompt delivery.  Under the facts of the case and the law applicable thereto this provision was not a penalty.

Upon the argument the question of whether there was a want of mutuality in the contract was raised. But an examination of the record discloses that this question was not brought to the attention of the court below or made a basis of any motion or assignment of error.  Under these circumstances the question is not before us.

Counsel for plaintiff asked for a directed verdict for the amount of its claim for the further reason that defendant was estopped from making this defense and had waived the provision of the contract under consideration.  It is quite possible that plaintiff, had it so desired or requested, would have been entitled to take the verdict of the jury on these questions but it was not entitled to a directed verdict on this ground as defendant's testimony was in conflict with that offered by plaintiff on this subject.  In the recent case of *Burton* v. *Ladd*, 211 Mich. 382, we said:

"In the court below both parties treated the case as presenting questions of law solely.  Both asked for a directed verdict.  Defendant's counsel made no suggestion that the case should be submitted to the

jury.   In this court it is suggested by him, however, that the case should have gone to the jury.   It is now too late to insist that the case should have gone to the jury or that the questions were not questions of law only.   *St. Mary's Power Co.* v. *Water-Power Co.*, 133 Mich. 470; *Wolverine Farms Co.* v. *DeYoung*, 182 Mich. 200."

With the conflict in the testimony on the questions of. estoppel and waiver the court could not say as matter of law that defendant was estopped to make this defense or that it had waived it.

The judgment must be affirmed.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.